IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Damon T. Jackson, ) | |
| ) | Civil Action No. 6:15-3725-TMC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| CO C. DeAngelo, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant's motion for summary judgment (doc. 37). The plaintiff, a pre-trial detainee[1] at Charleston County's Sheriff Al Cannon Detention Center (hereafter the "SACDC") who is proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. The defendant DeAngelo is a Corrections Officer at the SACDC. The plaintiff alleges that Officer DeAngelo violated his constitutional rights by using excessive force against him.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the district court.

The defendant filed his motion for summary judgment on February 12, 2016 (doc. 37). Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately (doc. 38). The plaintiff filed his response in opposition to the motion on March 4, 2016 (doc. 40). The defendant thereafter filed a reply on March 14, 2016 (doc. 42).

---

[1]The plaintiff was held on local charges when he filed this action, but has since been indicted in this court for sex trafficking of minors and is subject to a federal order of detention (*see* Crim. No. 2:16-cr-54-DCN).

**ALLEGATIONS**

The parties both allege that on August 3, 2015, Officer DeAngelo was collecting lunch trays from inmates in their cells. This required an inmate to slide his tray through a rectangular "feeding flap" in the cell door. When Officer DeAngelo came to the plaintiff's cell with the tray cart, the plaintiff said he had dropped his lunch tray and wanted another one, and DeAngelo refused. The parties dispute what happened next. According to the plaintiff, his arm was extended through the flap, and he refused to remove his arm from the flap until he received another lunch tray (doc. 1, p. 3; doc. 1-1, p. 1). Officer DeAngelo then allegedly grabbed his arm and "yanked it repeatedly" and "bent" it, then let go and shoved a tray through the flap into the plaintiff's chest (*id*.). After he "recovered," the plaintiff states that he tossed the tray back out and then realized his arm was bleeding (*id*.). According to Officer DeAngelo, after he refused to provide another lunch tray, the plaintiff grabbed his left hand through the door flap. Officer DeAngelo grabbed the plaintiff's arm in self-defense to loosen the plaintiff's grasp. After they separated, the plaintiff grabbed a tray off the lunch cart and threw it at Officer DeAngelo, missing him (doc. 37-2, DeAngelo aff. ¶¶ 10-16). Officer DeAngelo then reported the incident to a superior officer (*id*. ¶ 18).

The plaintiff was taken to the SACDC medical unit that same day, which noted a "1 ½ inch scratch" on his inner right forearm that required no treatment (doc. 37-5). Photographs of the plaintiff extending his arm through the cell door flap and of the plaintiff's scratched arm were taken (docs. 37-4, pp. 2-3). Charleston County deputies responded and took statements from the plaintiff and Officer DeAngelo, each saying they wished to pursue charges against the other (docs. 40-1, pp. 1-3). The deputies decided to charge the plaintiff and issued a "blue ticket" for third degree assault, which set a trial date in county court for September 29, 2015 (doc. 1-1, pp. 1-2). The plaintiff's assault charge was later dismissed when Officer DeAngelo did not appear in court, which he explains was due to a family medical conflict (doc. 37-2, DeAngelo aff. ¶ 23).

The plaintiff alleges that he attempted to pursue disciplinary action against Officer DeAngelo and filed multiple grievances, but no action was taken until he filed suit here approximately six weeks after the incident (doc. 40, p. 3). On his complaint filed here, he includes the signatures of three fellow inmates who "witness[ed] the whole thing" (doc. 1, p. 3). The defendant offers the affidavit of Captain Harley and the plaintiff's grievance records that show no grievances having been received for the incident (doc. 37-9, Harley aff., ¶¶ 11-12 & ex. 1). In October 2015, after the plaintiff filed his complaint here, Sgt. Herron was assigned to conduct an Internal Affairs investigation of the incident, which ultimately cleared Officer DeAngelo, concluding that the plaintiff and his witnesses were not credible (doc. 37-8, Herron aff., ¶¶ 5-6).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the

existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Id.* at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

***Failure to Exhaust Administrative Remedies***

In his motion for summary judgment, Officer DeAngelo argues that the plaintiff has failed to exhaust his administrative remedies prior to commencing this action.  The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law. See *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").  "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681.

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006).  As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90.  This is especially true in a prison context. *Id*. at 90 n.1.  Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules

because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The plaintiff claims he filed "many grievances and requests" following the incident but received no reply before filing suit here (doc. 1, p. 5).  Officer DeAngelo disputes this, providing the affidavit of Captain Harley, who describes the SACDC grievance system and includes a chart purporting to show all of the grievances filed by the plaintiff between July 24th and October 18th, with no grievances shown for the August 3rd incident (doc. 37-9, Harley aff. & ex. 1).  Though the plaintiff has provided no proof that he actually filed any related grievances, the court is concerned that the grievance chart may be incomplete.  Another chart submitted by Officer DeAngelo in support of summary judgment listing the plaintiff's major disciplinary violations has no record of the August 3rd incident, despite the uncontested fact that it occurred (doc. 37-3).  Moreover, Captain Harley describes the SACDC grievance as permitting an unresolved grievance to be forwarded to a "higher ranking officer," with five days response time added for each subsequent superior officer; however he does not describe when the officer review process ends or how the SACDC's administrative process is finally exhausted  (doc. 37-9, Harley aff. ¶¶ 4-8).  Accordingly, the undersigned recommends that summary judgment be denied on the issue of exhaustion and instead granted on the merits as addressed below.

***Excessive Force on Pre-Trial Detainee***

A pre-trial detainee's claim of excessive force is analyzed under the Due Process Clause of the Fourteenth Amendment.  *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008).  In *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-73 (2015), the Supreme Court determined that a pre-trial detainee alleging a violation of his constitutional rights must show, under the Fourteenth Amendment's Due Process Clause, that an officer's actions in an excessive use of force claim were objectively unreasonable. In other words, a pretrial detainee need not prove what a defendant's state of mind was at the time of the alleged constitutional violation, i.e., the subjective component in a typical Eighth Amendment excessive use of force claim alleged by a convicted prisoner. *Id*. The Court cautioned "[a]

court (judge or jury) cannot apply this standard mechanically." *Id*. at 2473 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). "Rather, objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id*. (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court noted that "[c]onsiderations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."  *Id.* (citing *Graham*, 490 U.S. at 396). Correctional staff must act "in haste, under pressure, and frequently without the luxury of a second chance," and the court must give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 320 (1986); *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Even when considering the evidence in a light most favorable to the plaintiff, his claim fails. Regardless of whether Officer DeAngelo grabbed the plaintiff's arm first to remove it from the flap as the plaintiff claims, the plaintiff has not demonstrated with sufficient specific evidence to show that the officer's actions were unreasonable. Without question, as a Corrections Officer in the SACDC, Officer DeAngelo is authorized to restore order and discipline when faced with a noncompliant inmate and to use appropriate force in relation to the level of noncompliance if necessary. The plaintiff admits that his arm was extended through the feeding flap in the door and that he refused Officer DeAngelo's command to remove it (doc. 1, p. 3; doc. 1-1). In a similar case from the Western District of Virginia, the court rejected an inmate's claim that excessive force was used against an inmate who likewise refused to remove his hands from the tray slot in his cell door despite the officer's command to do so. A struggle ensued, resulting in the slot being cleared and the inmate claiming excessive force injuries of broken fingers and scrapes and bruises to his hands and arms*.* As the district court recognized there, "Plaintiff's arms did not belong

6

outside of his cell when returning the lunch tray, and his persistent refusal to comply with staff's orders required some type of force to restore discipline and order." *Karavias v. Virginia*, C.A. No. 7:12-cv-624, 2013 WL 3879701, at *3 (W.D. Va. July 26, 2013). Officer DeAngelo's response here has not been shown to be excessive, as the violence described by the plaintiff is contradicted by the evidence of record, as well as the lack of evidence. The plaintiff claims that his arm was yanked repeatedly through the flap, causing his upper body and head to hit against the door, and that Officer DeAngelo then shoved a tray into his chest (doc. 1, p. 3). However, the only injury presented in the record is the small scratch on the plaintiff's arm, with no evidence whatsoever of immediate injuries or subsequent bruising to his upper body, head, or chest. Moreover, the plaintiff's medical records show that the scratch required no medical treatment or follow-up care, and the records contain no mention by the plaintiff or medical staff of subsequent bruising or associated pain that would be expected from such purported violence (doc. 37-5, pp. 1-15). This evidence, and the lack thereof, supports a finding of a reasonable application of force by Officer DeAngelo to restore order and discipline under the circumstances.

To support his allegations, the plaintiff presents merely his own statement made to the responding deputies (doc. 1-1) and the signatures of three purported witnesses, alleging that by "their signature [they are] verifying everything in this statement is true" (doc. 1, p. 3). However, his own statement to the deputies adds nothing of consequence to his allegations in his complaint, and the signatures of witnesses alone are insufficient to serve as supporting, much less verifying, evidence. The plaintiff has had ample opportunity to collect and submit to the court any verified statements from the witnesses themselves, but has failed to do so.

With no supporting evidence, the plaintiff argues against summary judgment by attacking inconsistencies with Officer DeAngelo's version of events and the integrity of Sgt. Herron's subsequent SACDC Internal Affairs report that cleared Officer DeAngelo. However, any shortcomings in Officer DeAngelo's submitted evidence are insufficient to

excuse the lack of evidence required from the plaintiff to defeat summary judgment. Accordingly, the motion should be granted.

### *Qualified Immunity*

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id*.

To determine whether qualified immunity applies, a district court must determine a plaintiff has alleged the deprivation of an actual constitutional right at all and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 134 S.Ct. 1861, 1865-66 (2014) (*per curiam*); and *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, the plaintiff's allegations fail to demonstrate that Officer DeAngelo violated his constitutional rights. Therefore, the undersigned finds Officer DeAngelo is entitled to qualified immunity.

### *Due Process*

To the extent the plaintiff invokes his right to due process to pursue criminal charges against Officer DeAngelo, this claim fails. The plaintiff cannot obtain criminal charges against a person who allegedly committed crimes against the plaintiff. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (a private citizen does not have a judicially cognizable interest in the prosecution or non-prosecution of another person). Closely on point is *Leeke v. Timmerman*, 454 U.S. 83, 86–87 (1981), which arose in South Carolina.

8

In *Leeke*, inmates who were allegedly beaten by prison guards sought criminal arrest warrants against the guards. The inmates presented sworn statements to a state magistrate, but the state magistrate, upon a Solicitor's request, declined to issue the warrants. The Supreme Court of the United States reiterated its earlier holding in *Linda R.S. v. Richard D.*, and held that a private citizen lacks a judicially cognizable interest in the criminal prosecution of other persons. *Leeke*, 454 U.S. at 86–87. Since the plaintiff does not have a due process right to seek criminal charges, such relief cannot be granted.

*State Law Claims*

In light of the recommendation that summary judgment be granted to Officer DeAngelo on the plaintiff's federal claims, it is recommended that any state law claims raised by the plaintiff be dismissed *without prejudice*. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Tigrett v. Rector and Visitors of the Univ. of Virginia*, 290 F.3d 620, 626 (4th Cir. 2002) (affirming district court's dismissal of state law claims when no federal claims remained in the case); and 28 U.S.C. § 1367(c)(3).

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendant's motion for summary judgment (doc. 37) be granted. The attention of the parties is directed to the notice on the next page.

IT IS SO RECOMMENDED.


June 29, 2016                                                                  s/ Kevin F. McDonald
Greenville, South Carolina                                                United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
300 East Washington Street
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).